UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RIVERDALE MILLS CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAVATORTA NORTH AMERICA, INC.,<br>METALLURGICA ABRUZZESE SPA, and<br>TRAFILERIA E ZINCHERIA CAVATORTA<br>SPA,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 15-CV-40132<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM IN SUPPORT OF RIVERDALE'S SPECIAL MOTION TO DISMISS COUNTERCLAIMS UNDER M.G.L. c. 231, §59H (ANTI-SLAPP STATUTE)

Plaintiff/Defendant in Counterclaim Riverdale Mills Corporation ("Riverdale") submits this Memorandum of Law in Support of its Special Motion to Dismiss all counts of the Counterclaim filed by Defendant/Plaintiff in Counterclaim Metallurgica Abruzzese SPA ("Metallurgica" or "Defendant") under Massachusetts' anti-SLAPP statute, M.G.L. c. 231, § 59H.[1] In the context of expedited discovery relating to Riverdale's Motion for Preliminary Injunction, Riverdale sought relevant discovery from certain customers of Riverdale and possible customers of Metallurgica and Defendant Cavatorta North America, Inc. ("Cavatorta") (collectively referred to as "Defendants"). Immediately prior to serving these customers with a subpoena duces tecum, Larry Walsh ("Walsh"), Riverdale's Vice President of Sales and Marketing, sent an email to these customers informing them that counsel for Riverdale would be reaching out and seeking certain information relating to the lawsuit. As context for the email and subpoenas, Walsh attached a portion of the publicly-filed pleadings in this matter. During the

---

[1] The acronym "SLAPP" stands for Strategic Litigation Against Public Participation.

1

921360.1

preliminary injunction hearing before this Court, Walsh testified that he sent these emails at the direction of counsel to give customers advance warning of a subpoena and context for receiving the same. It is these communications that serves as the basis for Metallurgica's counterclaims.

Defendants' counterclaims against Riverdale must be dismissed as they rest squarely on Riverdale's petitioning activity in violation of the Massachusetts anti-SLAPP statute, M.G.L. c. 231, § 59H. The conduct that Metallurgica now complains of – repeating allegations contained in the pleadings of the case to certain customers and sending portions of pleadings in advance of a subpoena duces tecum in Riverdale's effort to seek redress from this Court – is all quintessential petitioning activity. Where Cavatorta's counterclaims have no basis except Riverdale's petitioning activity, Cavatorta cannot avoid this SLAPP motion to dismiss.

## **FACTUAL BACKGROUND**[2]

Metallurgica is the Italian manufacturer of the Seaplax wire mesh product, the product at issue in the present action. Metallurgica's Answer and Counterclaim, Docket No. 40 ("Counterclaim"), ¶ 4. The Seaplax wire mesh product is advertised as made from high tensile steel wire that is galvanized after welding and then coated with PVC. *Id.*, ¶ 6. Cavatorta North America is the local distributor of Seaplax for the United States. *Id.*, ¶ 5. Riverdale manufactures and distributes welded wire mesh for use in marine traps. Memorandum and Order on Plaintiff's Motion for Preliminary Injunction, Docket No. 35 ("Order"), p. 1, attached here as Exhibit 1. Aquamesh is manufactured using a "galvanized after welding" (GAW) process followed by a polyvinyl chloride (PVC) coating (GAW + PVC), the combination of which

---

[2] In evaluating a special motion to dismiss under the anti-SLAPP statute, the court "shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." M.G.L. c. 231, § 59H.

extends the durability and longevity of the wire mesh in marine environments. *Id.*, p. 2. Cavatorta's Seaplax product directly competes with Riverdale's Aquamesh. Counterclaim, ¶ 3.

Between April of 2014 and May of 2015 Metallurgica produced a large quantity of Seaplax that was galvanized before welding ("GBW"), but was labeled as GAW. Order, p. 3; Counterclaim, ¶ 10. This production of this mislabeled Seaplax occurred over multiple production runs and resulted in approximately three million pounds of Seaplax product that was not GAW as advertised and labeled sent to Cavatorta for distribution. Order, p. 3. These events came to the attention of Cavatorta and Metallurgica in May of 2015, when Cavatorta's largest customer complained that it had received Seaplax product that was not GAW. *Id.*, pp. 3-4.

Upon learning of Metallurgica's production and sale of the mislabeled Seaplax product, Riverdale purchased some Seaplax product from Cavatorta customers for testing. Counterclaim, ¶ 11. On September 15, 2015, Riverdale initiated the instant action asserting three counts: (1) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) violation of Mass. Gen. Laws ch. 266, § 91; (3) violation of Mass. Gen. Laws ch. 93A; and (4) Common Law Unfair Competition. Order, p. 4; *see also* Docket Report. Riverdale also filed a Motion for Preliminary Injunction, which the Court heard and took under advisement on October 6, 2105, and ordered the parties to engage in expedited discovery. Docket No. 17. Metallurgica alleges that Riverdale reached out to known customers of Cavatorta and Metallurgica and informed them of the mislabeled Seaplax product, that it was taking legal action against Cavatorta and Metallurgica, and sent various court pleadings to the customer. Counterclaim, ¶¶ 12-16. A copy of the communications that Metallurgica specifically references in its counterclaim is attached hereto as Exhibit 2. *See* Email from Larry Walsh, dated October 14, 2014, Exhibit 2.[3]

---

3 This Court may consider the entire communication that Metallurgica references in its counterclaims. *See Airframe Sys., Inc. v. Raytheon Co.*, 520 F. Supp. 2d 258, 262-263 (D. Mass. 2007) *aff'd*, 601 F.3d 9 (1st Cir. 2010) (On a

3

The communication from Riverdale, sent by Walsh on October 14, 2015 to Scott Lyons of Atlantic Gulf & Fishing Supply – during the expedited discovery period – states, "You may or may not be aware of the particular proceedings that Riverdale has undertaken relative to Cavatorta selling GBW material as GAW.  I know that you are aware of the event(s)."  *See* Exhibit 2.  Walsh attaches Defendants' Opposition to Riverdale's Motion for Preliminary Injunction, and states that Riverdale's attorney would be reaching out and requesting additional information from the customer.  *Id*.  In response to a question from this particular customer about what information Riverdale's attorneys would be seeking, Walsh states that based on the pleadings and affidavits submitted by Metallurgica and Cavatorta and attached to the initial email, if the customer received falsely labeled product he should have received a notice from Cavatorta and some sort of monetary compensation.  *Id.*  Walsh notes that if the customer did not receive GBW product that was labeled as GAW, he would "have nothing to add."  *Id.*  Walsh then rephrases allegations contained within the Verified Complaint and other pleadings that "for a full year [Metallurgica/Cavatorta] were selling mislabeled product and traps are falling apart very quickly."  *Id.*  On October 14, 2015, Atlantic & Gulf Fishing Supply was served with a subpoena duces tecum, executed by Riverdale's counsel.  *See* Affidavit of Nicole E. Forbes ("Forbes Aff."), ¶ 3, attached here as Exhibit 3.

During the preliminary injunction hearing, Walsh was asked about these communications to customers.  *See* Exhibit 3, ¶ 2.  Walsh specifically testified that he was asked to send the email

---

motion to dismiss for failure to state a claim, "where the plaintiff has referenced part of a document in the complaint, it is proper for the court to view the rest of that document so as to be able to understand it in context."), citing *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir. 1996).

921360.1

communication by his attorney, so that the particular customers would not be surprised when they received a subpoena duces tecum from Riverdale's counsel:

> Q. Now, getting back to the email blast, you said that was done on the advice of counsel?
> MR. HILTON: Objection.
> THE COURT: Overruled.
> A. I was asked to send information to customers in -- so that they would be prepared if they received a subpoena.
> …
> Q. And the -- did you discuss with Mr. Hilton why he was recommending that you send out this email blast to Cavatorta customers?
> A. To make them aware that -- of what we were doing so that if they received a subpoena they would be -- they wouldn't be surprised. It was just to make sure that they weren't surprised by receiving a subpoena.
> …
> Q. So you're saying that you don't see any benefit to Riverdale by sending out this email blast with information about Cavatorta and the underlying lawsuit?
> A. The sole purpose of that was to make those customers aware that if they received a subpoena at least they knew what they were receiving a subpoena for; and, in fact, everybody who received that was already aware of the issue.

See Exhibit 3.

It is these communications, notifying a number of customers of the existence of the lawsuit, attaching a portion of the pleadings, and notifying them that in the context of the lawsuit and expedited discovery Riverdale's attorneys would be requesting information from them that form the basis for Metallurgica's claims.

## DISCUSSION

### I. METALLURGICA'S COUNTERCLAIMS VIOLATE THE ANTI-SLAPP STATUTE

#### A. Legal Standard

The anti-SLAPP statute allows civil defendants to resolve expediently lawsuits "designed to deter or retaliate against individuals who seek to exercise their right of petition." *Bargantine*

5

921360.1

*v. Mechanics Co-op. Bank*, No. CIV.A. 13-11132-NMG, 2013 WL 6211845, at *2 (D. Mass. Nov. 26, 2013), quoting *Keegan v. Pellerin,* 76 Mass. App. Ct. 186, 189 (2010); *see also Kobrin v. Gastfriend*, 443 Mass. 327, 331 (2005).  The Massachusetts Supreme Judicial Court has outlined a two-step procedure for special motions to dismiss under M.G.L. c. 231, § 59H.  To prevail, the movant (Riverdale) must first make a threshold showing that the claim of the non-movant (Metallurgica) is "based on" the movant's protected petitioning activities and has no other "substantial basis."  *Id.*, citing *Duracraft Corp. v. Holmes Prods. Corp.,* 427 Mass. 156, 167-168 (1998).  Once that showing is made, the burden shifts to Metallurgica to demonstrate by a preponderance of the evidence that "the petitioning activities lacked any reasonable factual support or any arguable basis in law" and that the petitioning activity has caused actual injury.  *Id.*, citing *Fustolo v. Hollander,* 455 Mass. 861, 865 (2010).[4]

In this inquiry, courts consider pleadings and affidavits without indulging inferences in favor of the non-moving party.  *Id.*, citing G.L. c. 231, § 59H; *S. Middlesex Opportunity Council, Inc. v. Town of Framingham,* No. 07–12018–DPW, 2008 WL 4595369, at *10–11 (D. Mass. Sept. 30, 2008).  Here, based on a review of the record before the Court, Riverdale can clearly establish that Metallurgica's claims are based Riverdale's petitioning activities, that the petitioning activity under attack occurred in connection with Riverdale's petition for redress before this Court, and has no other substantial basis.  Given the Court's Order on Riverdale's Motion for Preliminary Injunction and the undisputed fact that for approximately a year Metallurgica produced and sent to Cavatorta for distribution approximately three million pounds of Seaplax product that was not GAW as advertised and labeled, Metallurgica cannot

---

[4] The anti-SLAPP statute further provides that when a special motion is granted, "the court shall award the moving party costs and reasonable attorney's fees..."  M.G.L. c. 231, § 59H.

demonstrate that Riverdale's petition lacked any reasonably factual support or arguable basis in law.

### B. Substantive Nature of Anti-SLAPP Motions

While this Court has previously considered anti-SLAPP motions to be procedural remedies inapplicable in federal courts, the First Circuit the First Circuit Court of Appeals recently held that Maine's anti-SLAPP statute applied to state law claims brought in federal diversity actions. *See Bargantine*, 2013 WL 6211845, at *3, citing *Godin v. Schencks*, 629 F.3d 79, 92 (1st Cir. 2010). The First Circuit stated that "[m]any states have enacted special statutory protections for individuals...named as defendants as a result of the exercise of their constitutional rights to petition the government." *Godin*, 629 F.3d at 81. "These anti-SLAPP laws provide such defendants with procedural and *substantive* defenses meant to prevent meritless suits from imposing significant litigation costs and chilling protected speech." *Id.* (emphasis added).

Thereafter, in *Bargantine*, Judge Gorton held, based on the logic of *Godin* and the near-identical language between the Maine and Massachusetts anti-SLAPP statutes, that the Massachusetts anti-SLAPP statute is substantive and that its remedies thus may be imposed in a federal court proceeding. 2013 WL 6211845, at *3; *see also Sullivan v. Flaherty*, No. 14-CV-14299-ADB, 2015 WL 1431151, at *5 (D. Mass. Mar. 27, 2015) (agreement with Judge Gorton's view of the substantive nature of the anti-SLAPP statute, but declining to reach the issue). Given the near-identical language and intent between the Massachusetts and Maine anti-SLAPP statutes, and the fact that Metallurgica's counterclaims are based on state law, this Court should follow Judge Gorton's ruling in *Bargantine* and the analysis in *Godin* that the Massachusetts anti-SLAPP statute is enforceable in a federal court proceeding.

921360.1

### C. Petitioning Activity Is Broadly Defined Under M.G.L. c. 231, § 59H – It Plainly Includes The Activity For Which Riverdale Has Been Sued

The anti-SLAPP statute defines broadly "a party's exercise of its right of petition" to include:

> *any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding*; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

M.G.L. c. 231, § 59H (emphasis added).5  The Supreme Judicial Court has stated that "[t]he legislative history in Massachusetts demonstrates that in response to the problem of SLAPP suits, the Legislature intended to enact very broad protection for petitioning activity." *Duracraft*, 427 Mass. at 162.

A central question in determining whether a movant has exercised "its right to petition" is whether the statement in question was made "in connection with" a governmental or judicial proceeding.  Petitioning activity is made "in connection with" and possesses the "crucial characteristic" of petitioning activity if it has "the potential or intent to redress a grievance, or directly or indirectly to influence, inform, or bring about governmental consideration of the issue."  *Global NAPs, Inc. v. Verizon New England, Inc.*, 63 Mass. App. Ct. 600, 605, 607-608 (2005); *Wynne v. Creigle*, 63 Mass. App. Ct. 246, 254 (2005) (broadly holding that statements

---

5 The legislative preamble to the statute declared that "full participation by persons and organizations and robust discussion of issues before legislative, judicial, and administrative bodies and in other public fora are essential to the democratic process," and found that "there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of constitutional rights of speech and petition for the redress of grievances."  Preamble to House Doc. No. 1520.

8

921360.1

are made "in connection with" when they are "sufficiently tied to" and "in advancement of" the petition under review).  Further, it is well-settled that a petitioner is engaged in core petitioning activity when he (1) merely repeats allegations contained in his petition for judicial redress (mirror imaging) or (2) does so in response to the other party's attacks.  *See Cadle Co. v. Schlichtmann*, 448 Mass. 242, 251 (2007).

Here, the activities that Metallurgica complains of are classic petitioning activities made in connection with Riverdale's lawsuit against Metallurgica and thus protected by the enumerations of M.G.L. c. 231, § 59H.  Metallurgica complains that in the context of conducting expedited discovery, Riverdale contacted Metallurgica and Cavatorta customers (who were also Riverdale customers) and: (1) notified them that Riverdale had filed legal action against Metallurgica relating to its false advertising and mislabeling of its Seaplax product; (2) attached a portion of the pleadings in the underlying lawsuit; (3) repeated allegations contained with the pleadings; and (4) notified that customers that Riverdale's attorneys would be reaching out and requesting information relating to Metallurgica and the Seaplax product.  All of the communications challenged were made in connection with Riverdale's lawsuit and more specifically in connection with Riverdale conducting discovery relating to its Motion for Preliminary Injunction.  *See Fabre v. Walton*, 436 Mass. 517, 523 (2002) (filing for an abuse protection order, submission of supporting affidavits, and testifying at 209A proceedings all constitute petitioning activities); *Burley v. Comets Community Youth Center*, 75 Mass. App. Ct. 818, 821 (2009) (sending copies of no-trespass letter to the police and court was petitioning activity).

In addition, the statement that "for a full year [Metallurgica/Cavatorta] were selling mislabeled product and traps are falling apart very quickly" is a mirror image of statements

9

921360.1

found within the Verified Complaint, Motion for Preliminary Injunction, and Metallurgica's Opposition to Riverdale's Motion for Preliminary injunction. Statements made to third parties are made "in connection with" an issue under consideration when those statements are mirror images, or put differently, when they are mere repetitions of the party's allegations advanced in those judicial or governmental proceedings. *Cadle Co.*, 448 Mass. at 249; *Wynne*, 63 Mass. App. Ct. at 254 ("The [press] statements ... were essentially mirror images of those she made during and 'in connection with' the departmental investigation ... Taken in context, her mere repetition of those statements to the media was also possessed of the characteristics of petitioning activity."). Metallurgica cannot plausibly claim that Riverdale's statement that "for a full year [Metallurgica/Cavatorta] were selling mislabeled product and traps are falling apart very quickly" is distinct in kind or variety or that it is peripheral, from the core allegation it advances in its petition for redress. 6

Metallurgica will likely rely on *Kalter v. Wood*, 67 Mass. App. Ct. 584 (2006) to support its contention that the mere repetition of protected statements does not make the repeated statements protected. However, the court in *Kalter* did not reject the holding of *Wynne* and the mirror image doctrine, but stated that the context in which the admittedly protected statements are repeated is of "paramount importance," and factually distinguished the case from *Wynne*. *Kalter*, 67 Mass. App. Ct. at 587-588. The court in *Kalter* held that the repeated statements were not made in connection with an issue under review – there was no pending investigation into the plaintiff's allegations. Here, and like in *Wynne*, Riverdale had filed its lawsuit with this Court

---

6 Massachusetts case law does not require a petitioner to quote verbatim its petition allegations in order to retain the protection of mirror-image petitioning activity. *Cadle Co.*, 448 Mass. at 249 (the SJC finding statements which are "essentially mirror images of those [the defendant] made during ... the departmental investigation" are protected); *Wynne*, 63 Mass. App. Ct. at 253-254 (holding that statements to the press which are "essentially mirror images of those made during and 'in connection with' the departmental investigation" are petitioning activity when "taken in context").

10

921360.1

and was in the process of conducting expedited discovery relating to its Motion for Preliminary Injunction. Thus, the context in which Riverdale repeated its petitioning activities, was in connection with an issue under review or consideration by a governmental body, and are protected.

### 1. The Motive Or Intent Behind Riverdale's Actions Is Immaterial And Irrelevant At This Stage

At this threshold stage the focus is on the conduct complained of; the motive behind the petitioning activity is irrelevant. *Office One, Inc. v. Lopez*, 437 Mass. 113, 122 (2002). If the conduct complained of is petitioning activity, then there can be no other substantial basis for the claim. *Id.*, citing *Fabre*, 436 Mass. at 524 (notwithstanding allegations concerning motive behind the plaintiff's conduct, "the fact remains that the *only* conduct complained of is [plaintiff's] petitioning activity. There is no 'substantial basis' for the claim other than that petitioning activity.") (emphasis in original). The statutory definition of "petitioning" encompasses all statements made in the context of or in connection with legal proceedings, whether true or false, and regardless of what motivation gave rise to them. *Office One, Inc.*, 437 Mass at 122-123; *Fabre*, 436 Mass. at 524; *McLarnon*, 431 Mass. at 348.

Here, as detailed above, all of the conduct complained of by Metallurgica consists of petitioning activity. It has not shown any evidence that there is a substantial basis beyond the petitioning activities to sustain its claims.

### II. THE COURT MUST GRANT RIVERDALE'S MOTION TO DISMISS UNLESS DEFENDANTS DEMONTRATE BOTH THAT THE PETITIONING ACTIVITY IS DEVOID OF BASIS AND THAT THE PETIONING ACTIVITY CAUSED ACTUAL INJURY

Having established that Metallurgica's counterclaims are substantially based on Riverdale's petitioning activities, the burden shifts to Metallurgica to demonstrate: (1) that

Riverdale's petitioning activity lacked any reasonable factual support or basis in law; and (2) that it was harmed by Riverdale's petitioning activities.

Metallurgica cannot remotely show that "[Riverdale's] exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law." M.G.L. c. 231, § 59H. The record evidence demonstrates that Metallurgica admits that between April of 2014 and May of 2015, it produced a large quantity of Seaplax that was galvanized before welding ("GBW"), but was labeled as GAW. *See* Order, p. 3; Counterclaim, ¶ 10; *see also* Defendants' Opposition to Riverdale's Motion for Preliminary Injunction, Docket No. 16. Given Metallurgica's admissions and this Court's Order relating to Riverdale's Motion for Preliminary it cannot reasonably be argued that Riverdale's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law.

Further, Metallurgica has failed to plead any factual allegations that it was harmed by Riverdale's petitioning activity. *See Plante v. Wylie*, 63 Mass. App. Ct. 151,161 (2005) (the non-movant must show *both* that the petitioning activity is devoid of substance *and* that it was harmed by it). Given that Metallurgica admits to the mislabeling of the Seaplax product, it cannot possibly show that it was Riverdale's petitioning activity which harmed it. Accordingly, Riverdale's Special Motion to Dismiss must be granted.

## CONCLUSION

For all these reasons, Plaintiff/Defendant-in-Counterclaim Riverdale Mills Corporation respectfully requests this Court dismiss Defendant/Plaintiff in Counterclaim Metallurgica Abruzzese SPA's Counterclaim, in its entirety, pursuant to M.G.L. c. 231, § 59H.

921360.1

**Request For Attorney's Fees and Costs Under Mass. G.L. c. 231, § 59H**

Riverdale requests this Court award it its reasonable attorneys' fees and costs as required by M.G.L. c. 231, § 59H.  *Office One, Inc. v. Lopez*, 437 Mass. 113 (2002) ("We read [Mass. G.L. c. 231, § 59H] to mean that attorney's fees and costs are mandatory for successful special motions, and the amount of the award need not be limited to legal work incurred in bringing the special motion itself.").

RIVERDALE MILLS CORPORATION

By Its attorneys

/s/ *Nicole E. Forbes*
William E. Hilton, BBO#559515
   william.hilton@gesmer.com
Lee T. Gesmer, BBO#190260
   lee.gesmer@gesmer.com
Nicole Forbes, BBO#674022
   nicole.forbes@gesmer.com
Gesmer Updegrove LLP
40 Broad Street
Boston, Massachusetts 02109
Telephone:  (617) 350-6800
Facsimile:  (617) 350-6878

Dated: February 16, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2016, a copy of the foregoing was filed electronically with the Clerk for the United States District Court for the District of Massachusetts using the CM/ECF system.

/s/ *Nicole E. Forbes*
Nicole E. Forbes

921360.1